FILED

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAY 04 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARVIN MAURICE CAMPBELL,

Defendant - Appellant.

No. 14-16057

D.C. Nos.   4:11-cv-00073-CW
            4:09-cr-00640-CW-1

MEMORANDUM*

Appeal from the United States District Court
for the Northern District of California
Claudia Wilken, Senior District Judge, Presiding

Argued and Submitted August 12, 2015
San Francisco, California

Before:    **KOZINSKI** and **TALLMAN**, Circuit Judges, and **RAYES**,** District
Judge.

**AFFIRMED** for the reasons stated by the district court.

---

* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

** The Honorable Douglas L. Rayes, District Judge for the U.S. District
Court for the District of Arizona, sitting by designation.

<u>United States v. Campbell, 14-16057</u>

RAYES, District Judge, dissenting:

Fundamentally, this case is about whether trial counsel gave his client the information he needed to make an informed decision about whether to forgo a defense and accept a plea agreement. Because counsel did not understand which law governed a critical suppression motion, and because such a motion was far more likely to succeed under the applicable law than under the law that counsel mistakenly applied, I conclude counsel's performance was deficient.

"[C]riminal justice today is for the most part a system of pleas, not a system of trials." *Lafler v. Cooper*, 132 S.Ct. 1376, 1388 (2012). The decision to plead guilty rests squarely with the defendant, and must be made voluntarily and intelligently because doing so waives important constitutional rights and protections. *Brady v. United States*, 397 U.S. 742, 748 (1970). Defendants are entitled to effective assistance of counsel during this critical process because "an intelligent assessment of the relative advantages of pleading guilty is frequently impossible without the assistance of an attorney . . . ." *Id.* at n.6.

A guilty plea entered before the presentation of evidence necessarily requires difficult judgments about the strength of the government's case and any available defenses, as well as the potential consequences that could follow either a

guilty plea or a jury's conviction. When making this decision, a defendant relies on counsel's informed assessment of the relative benefits and risks of accepting a plea or going to trial. Thus, among counsel's responsibilities during this critical stage is to "supply criminal defendants with necessary and accurate information." *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986).

In 2009, Appellant Marvin Maurice Campbell was indicted on drug and firearm related charges based entirely on evidence obtained through the warrantless search of an apartment thought to be his residence. At the time of the search, Campbell was on probation. The government offered Campbell a plea agreement and warned that it would use his prior felony drug conviction to enhance his potential sentence from ten to fifteen years imprisonment if he defended himself in any way, including filing a suppression motion. Federal law governed the constitutionality of the search, but Campbell's counsel mistakenly believed California law applied. Under California law an officer conducting a probation search may enter a dwelling if the officer *reasonably believes* that the probationer lives there. *People v. Downey*, 130 Cal. Rptr. 3d 402, 409 (Cal. Ct. App. 2011). Based on his understanding of California law, Campbell's counsel believed a suppression motion was not likely to succeed. He advised Campbell that it would not be in his best interest to file a suppression motion, given the threat of an

enhanced sentence. Following counsel's advice, Campbell accepted the plea and was sentenced to 130 months imprisonment.

Contrary to counsel's mistaken belief, federal courts apply federal law, not state law, when assessing the constitutionality of a probation search and the admissibility of the evidence acquired as a result. *See United States v. Chavez-Vernaza*, 844 F.2d 1368, 1373-74 (9th Cir. 1987). Federal courts in this Circuit apply a "relatively stringent" standard to probation searches, under which an officer may enter a dwelling only if there is *probable cause* to believe it is the probationer's residence. *United States v. Howard*, 447 F.3d 1257, 1262 (9th Cir. 2006), *overruled in part on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012). Under this higher standard, suppression of the evidence would have been far more probable.

In *Howard*, after surveying several of our cases applying the probable cause standard to uphold probation searches, this Court identified some useful patterns. In cases upholding the validity of a probation search, "officers had good reason to believe that [the probationer] was not actually residing at the reported address." *Howard*, 447 F.3d at 1265. In each case, "the officers had directly observed something that gave them good reason to suspect that the [probationer] was using his unreported residence as his home base." *Id.* at 1265-66. The probationer also had a key to the residence under investigation. *Id.* at 1266. Further, in many cases

the probationer or a co-resident identified the residence as that of the probationer. *Id.*

Here, the officers knew the apartment was not Campbell's registered address. They conducted no surveillance of Campbell's registered address, and surveilled the subject apartment for only twenty minutes. During that time, they observed no convincing signs that Campbell lived there. Nor did Campbell admit that he lived at the apartment when questioned. The only *Howard* pattern arguably observed was that Campbell had a key to the exterior door of the apartment complex, but apparently not to the apartment itself, as officers had to use force to enter it. Although a suppression motion based on these facts might have been unlikely to succeed under California law, it would have been, at the very least, a close call under this Circuit's strict probable cause standard.

Campbell filed the instant 28 U.S.C. § 2255 petition in 2011, alleging that counsel rendered constitutionally deficient performance by mischaracterizing the merits of a suppression motion based on ignorance of governing law. He contends that he would not have accepted the plea agreement and, instead, would have defended against the charges had he known a suppression motion was governed by a more favorable standard than counsel had advised. Ineffective assistance of counsel claims are governed by *Strickland v. Washington*'s two-part test, under which a petitioner must show both that counsel's performance was deficient and

that the deficient performance prejudiced his defense.  466 U.S. 668, 687 (1984);

*Hill v. Lockhart*, 474 U.S. 52, 58 (1985) ("[*Strickland*] applies to challenges to

guilty pleas based on ineffective assistance of counsel.").  The district court denied

Campbell's petition after concluding he had failed to satisfy the first prong of this

test.  Although the district court acknowledged counsel's erroneous belief that state

law would apply to a suppression motion, it nonetheless found that counsel's

advice fell within objectively reasonable standards because "it was not

unreasonable to advise [Campbell] to give up the motion in order to limit the

mandatory portion of his sentence to ten years . . . ."

The error in the district court's reasoning, which the majority affirms today,

is treating Campbell's potential exposure to a higher mandatory minimum sentence

as an independent and reasonable justification for counsel's mistaken advice.

Under these circumstances, where suppression of the evidence would have resulted

in dismissal of the charges, the consequences of filing a suppression motion cannot

so easily be divorced from advice about the likelihood that such a motion would

succeed.  Instead, these assessments are two sides of the same coin: the benefits

and risks of accepting a plea or defending against the charges.

Certainly, "[w]aiving trial entails the inherent risk that the good-faith

evaluations of a reasonably competent attorney will turn out to be mistaken either

as to the facts or as to what a court's judgment might be on given facts."  *McMann*

*v. Richardson*, 397 U.S. 759, 770 (1970). "There is no guarantee that the accused will make the correct decision or that in hindsight such plea will not reflect an error in fact or judgment." *Johnson v. United States*, 539 F.2d 1241, 1243 (9th Cir. 1976). But here we are not confronted with an attorney's error in fact; we are confronted with an attorney's error in law. "An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*." *Hinton v. Alabama*, 134 S. Ct. 1081, 1089 (2014). I cannot confidently conclude that Campbell made an informed and intelligent decision in light of counsel's ignorance of law and resulting miscalculation of the relative benefits and risks of accepting the plea or defending against the charges. Accordingly, I conclude that counsel's performance fell below objectively reasonable standards.

In denying Campbell's petition, the district court reached only the first prong of *Strickland*. I would remand for consideration of the second. Specifically, I would instruct the district court to determine how counsel would have advised his client had he assessed the merits of a suppression motion under the correct legal standard, and whether Campbell rationally would have rejected the plea and defended against the charges had he been so advised.

I respectfully dissent.